FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 01, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JENNIFER C., | No. 2:16-cv-00426-FVS |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| | ECF Nos. 19, 20 |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 19, 20. This matter was submitted for consideration without oral argument. Plaintiff was represented by attorney R. Gary Ponti. Defendant was represented by Special Assistant United States Attorney David J. Burdett. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, Plaintiff's Motion, ECF No. 19, is granted and Defendant's Motion, ECF No. 20, is denied.

## JURISDICTION

ORDER - 1

Jennifer C. ("Plaintiff") filed for disability insurance benefits ("DIB") and for supplemental security income ("SSI") on May 1, 2012. Tr. 81, 231, 241, 267. Plaintiff alleged an onset date of August 1, 2008. Tr. 81, 231, 241. Benefits were denied initially, Tr.181-84, and upon reconsideration, Tr. 190-91. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on April 24, 2014. Tr. 73-144. On January 16, 2015, the ALJ denied Plaintiff's claim, Tr. 55-64, and the Appeals Council denied review. Tr. 29-33. The matter is now before this Court pursuant to 42 U.S.C. § 405(g); 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was 32 years old at the time of the hearing. Tr. 125. She was a third-grade teacher. Tr. 103. In 2007, her uterus was punctured during a pregnancy termination. Tr. 102. She continued to have health problems afterward and stopped teaching. Tr. 103. She has severe dysmenorrhea and endometriosis. Tr. 109. She testified she bleeds 12-15 days per month. Tr. 109. When she is bleeding, she is bedridden and in severe pain. Tr. 109. She has S.I. joint dysfunction of both sides and myosclerosis. Tr. 99. She wears an S.I. belt 23 hours a day. Tr. 99. She has had leg pain since she was a child and it has gotten

worse.  Tr. 120-21.  She has trouble getting sleep sometimes due to leg pain.  Tr. 121.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

ORDER - 3

ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE–STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i);

ORDER - 4

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c); 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity." Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the

analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).

If the claimant is capable of performing past relevant work, the Commissioner

must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f).

If the claimant is incapable of performing such work, the analysis proceeds to step

five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination,

the Commissioner must also consider vocational factors such as the claimant's age,

education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v);

416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§

404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.920(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since August 1, 2008, the alleged onset date. Tr. 57. At step two, the ALJ found Plaintiff has the following severe impairments: endometriosis/dysmenorrhea and bilateral SI joint dysfunction with radiculopathy. Tr. 57. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 58. The ALJ then found Plaintiff has the residual functional capacity to perform light work with the following additional limitations:

> [T]he claimant could sit, stand, and walk for up to 6 hours each in an 8 hour workday for up to 1 hour without interruption. The claimant could frequently use both upper extremities for reaching, handling, fingering and feeling and both lower extremities for frequent foot controls. She could occasionally climb ladders/ropes/scaffolds and frequently climb stairs/ramps, balance, stoop, kneel, crouch, crawl,

operate a motor vehicle, be exposed to extreme temperatures and work around moving mechanical parts. The claimant could also have frequent exposure to humidity, vibrations and dust, odors, and gases.

Tr. 59.

At step four, the ALJ found Plaintiff is capable of performing past relevant work as an elementary school teacher, home attendant, waitress, and nursery school attendant. Tr. 62. Alternatively, after considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as cleaner housekeeping, storage facility rental clerk, and sales attendant. Tr. 63. Therefore, at step five, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from August 1, 2008, through the date of the decision. Tr. 64.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying disability benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 19. Plaintiff raises one issue for review: whether the ALJ improperly rejected a portion of the medical opinion of Robert Betz, M.D. ECF No. 19 at 7-10.

## DISCUSSION

ORDER - 8

Plaintiff contends the ALJ improperly rejected a portion of the medical opinion of Robert Betz, M.D.  ECF No. 19 at 7-10.  Dr. Betz has been Plaintiff's treating obstetrician/gynecologist since 2008 and completed numerous DSHS assessments and evaluations.  In August 2008, Dr. Betz diagnosed pelvic pain and metrorrhagia, indicated Plaintiff's conditions caused a moderate to marked interference with her ability to work, and opined Plaintiff was limited to sedentary work.  Tr. 431.  On August 27, 2008, Dr. Betz performed a hysteroscopy and laparoscopy to remove adhesions and ovarian cysts.  Tr. 462.  In January 2009, Dr. Betz listed the same diagnoses and again opined Plaintiff was limited to sedentary work.

In February 2010, Dr. Betz diagnosed pelvic adhesions, possible endometriosis, severe dysmenorrhea, and ovarian cysts.  Tr. 423.  He indicated Plaintiff's endometriosis and dysmenorrhea caused a marked or severe interference with her ability to work and noted she was restricted in all areas except balancing and perhaps sitting when she has severe dysmenorrhea or pelvic pain.  Tr. 423.  Dr. Betz opined Plaintiff was capable of light work "except when affected [with] above."  Tr. 423.  To improve employability, Dr. Betz recommended laparoscopy followed by treatment to stop periods.  Tr. 424.  In March 2010, Plaintiff underwent a second laparoscopy.  Tr. 500.

In September 2010, Dr. Betz reported Plaintiff could stand for two to three hours, sit for five to six hours, and lift ten pounds occasionally and five pounds frequently. Tr. 419. Similarly, in December 2010, Dr. Betz opined Plaintiff could stand for two hours in and eight-hour work day, sit for six hours in an eight-hour work day, and lift 15 pounds occasionally and ten pounds frequently. Tr. 417.

In February 2012, Dr. Betz found Plaintiff's work function was impaired by her physical condition, but she could stand for six hours, sit for prolonged periods with occasional pushing and pulling, and could sit for most of the day with walking or standing for brief periods. Tr. 415. She could lift a maximum of 20 pounds and frequently lift or carry ten pounds. Tr. 415. Dr. Betz noted:

> Patient is fairly functional at present. She is dependent on narcotic pain medication for pain control. She may have intermittent debilitating pain. She suffers from anxiety + it is worsened by stress. She needs ongoing medical care + supervision to remain functional. She needs further work up for her leg pain.

Tr. 416.

In January 2014, Dr. Betz noted there had been multiple attempts with medication to treat Plaintiff's endometriosis, but she had not tolerated them. Tr. 692. She had surgery in August 2008 and March 2010. Tr. 462, 500, 692. Dr. Betz opined that Plaintiff is incapacitated for seven to ten days each month and is

unable to work during that period.  Tr. 692-94.  He also noted another attempt to reduce symptoms through medication.[1]  Tr. 694.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant

---

[1] Dr. Betz also prepared a letter and updated Medical Source Statement dated April 21, 2015, which was submitted to the Appeals Council but not reviewed by the ALJ.  Tr. 21.  In that letter, Dr. Betz indicated Plaintiff had "settled into a routine which works fairly well for her endometriosis pain except at the time of her period.  At that time she continues to be disabled for 3-5 days each month.  While she is on her menstrual cycle she is bed bound due to pain.  This is consistent and happens every month."  Tr. 21.  The 2015 opinion from Dr. Betz is properly considered by the Court, although it is noted the wording of the letter suggests it may pertain to the period after the ALJ's decision.  *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012) ("We hold that when a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence.").

ORDER - 11

but who review the claimant's file (nonexamining or reviewing physicians)."
*Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).
"Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

The ALJ gave great weight to Dr. Betz's findings that Plaintiff could do light work, and little weight to the earlier assessments that Plaintiff was limited to sedentary work. Tr. 61. The ALJ found that Dr. Betz's treatment notes, the medical evidence of record, and the assessment of the medical expert, Dr. Francis, support Dr. Betz's assessment that Plaintiff is limited to light work. Tr. 61. Plaintiff does not dispute this finding. ECF No. 19 at 7-10.

However, the ALJ gave little weight to Dr. Betz's opinion that Plaintiff is incapacitated for seven to ten days each month. Tr. 61. The ALJ gave this portion of Dr. Betz's opinion no weight "because the record does not show that the claimant would be completely unable to work during her period. No doctor has noted complete incapacity in the claimant's treatment notes." Tr. 61. Plaintiff contends the ALJ failed to give adequate weight to Dr. Betz's opinion that she is incapacitated for seven to ten days each month. ECF No. 19 at 7-10.

First, the ALJ found the record does not show that Plaintiff would be completely unable to work during her period. Tr. 61. An ALJ may discredit a treating physician's opinion that is unsupported by the record as a whole or by objective medical findings. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). However, the ALJ did not address or discuss numerous medical records suggesting Plaintiff may be unable to work during her period. During a psychological evaluation in April 2010, Plaintiff told Dr. Rubin she has

ORDER - 13

not worked since January 2009 because of abdominal pain and endometriosis. Tr. 440. She reported feeling well enough to work at her father's business about two out of every seven days. Tr. 400. In August 2010, Plaintiff's abdominal pain was constant and "out of control." Tr. 483. Despite taking Lupron to stop her periods, she was bleeding and had terrible pain. Tr. 483. She was losing weight because she did not feel well enough to eat or cook. Tr. 483.

By November 2010, she was still bleeding despite a second dose of Lupron and was having bad, painful cramps with her periods. Tr. 480. In December 2010, she stated she did not want to be dependent on narcotics but was having significant pain. Tr. 476. She had only three days without bleeding in the past three weeks. Tr. 476. At another psychological evaluation in March 2011, she told Dr. Rubin she spent the day at home checking voicemail for her father's business, doing paperwork, and scheduling. Tr. 394. She would also lay down during the day. Tr. 394. Dr. Rubin noted she lacked the energy and drive she used to have and could not sustain the work effort for an eight-hour day. Tr. 395. The same month, she reported daily chronic pelvic pain and menses two times per month to nurse practitioner Dawn Meicher. Tr. 472. In April 2011, Ms. Meicher noted she had extremely heavy menses and complained of being in pain. Tr. 611. In fact, she had an overflow of her menstrual pad while bending forward for an injection. Tr.

612.  In December 2011, she was "really hurting" and her chronic pain and long-term use of medication was noted.  Tr. 603.

In February 2012, Dr. Betz indicated that she experienced "intermittent debilitating pain."  Tr. 416.  He noted she had longstanding endometriosis and had several surgeries to attempt to improve her condition, but none had given long lasting relief.  Tr. 468.  She had been treated with Lupron and other medications to suppress ovarian function and her cycles, but they were not as successful as hoped for.  Tr. 468.  She required ongoing narcotic pain management.  Tr. 468.  In January 2014, Dr. Betz noted Plaintiff's history of "significant dysmenorrhea with each and every period."  Tr. 709.  Plaintiff reported "a lot of premenst[ru]al pain lasting about a week prior to period coming down.  Pain continues through period. Period last 10 days last month.  Usually has about a week of fairly comfortable time then it starts over again."  Tr. 709.  Examination revealed tenderness in her abdomen on palpation and palpable nodules.  Tr. 710.  In March 2014, he noted her abnormal bleeding had been increasing and she had up to two periods per month. Tr. 706.  On exam, she appeared anxious and uncomfortable, and there was tenderness in her abdominal wall.  Tr. 707.

The ALJ did not address these records and the overall pattern of pain, treatments, and narcotic medication suggested in the record.  Tr. 57-62.  In fact, the ALJ's did not cite any evidence supporting the determination that the overall

ORDER - 15

record does not support Dr. Betz's conclusions. "The ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988). The ALJ's finding is conclusory and overlooks significant evidence in the record reasonably supporting Dr. Betz's opinion.

Second, the ALJ found no doctor noted complete incapacity in Plaintiff's treatment notes. Tr. 61. Neither the ALJ nor the Defendant provide any authority identifying this as a legitimate reason for rejecting the opinion of a treating provider, and the Court finds none. Tr. 61; ECF No. 20 at 2-6. As Plaintiff notes, Dr. Betz's office visit notes actually do contain references to symptoms so severe that Plaintiff may be incapacitated during her period. ECF No. 19 at 8-9 (citing Tr. 706-15); *see also* Tr. 480 ("bad painful cramps with periods"), Tr. 483 ("pain is out of control"), Tr. 709 ("a lot of premen[strual] pain" and medication change "to hopefully make her more functional"). To the extent the ALJ intended to suggest Dr. Betz's finding is not supported by the record, *see Batson*, 359 F.3d at 1195 (finding an ALJ may discredit a treating physician opinion that is unsupported by the record as a whole), the Court concludes Dr. Betz's treatment notes and other notes in the record include findings which reasonably support Dr. Betz's assessment of intermittent periods of incapacity, as discussed *supra*. Neither the ALJ nor the Defendant address these notes with specificity or identify any

contradictory evidence. *See Rodriguez v. Bowen*, 876 F.2d 759,762 (9th Cir. 1989) (quoting *Embrey*, 849 F.2d at 421) ("Merely to state that a medical opinion is not supported by enough objective findings 'does not achieve the level of specificity our prior cases have required.'").

The ALJ's finding regarding Dr. Betz's opinion that Plaintiff is incapacitated for seven to ten days per month does not meet the standard of "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings," *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)). The ALJ pointed to no evidence in the clinical record contradicting Dr. Betz's opinion. *See Trevizo v. Berryhill*, 871 F.3d 664, 677 (9th Cir. 2017). Furthermore, no other physician in the record discussed or specifically contradicted Dr. Betz's opinion regarding Plaintiff's incapacity for seven to ten days per month. Case law requires a contradictory opinion from the consulting physician and substantial evidence independent of that opinion in order to reject conclusions of an examining or treating physician. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The only other physician opinions in the record are the non-treating, non-examining opinions of Dr. Francis, the medical expert who reviewed the record and answered interrogatories but did not appear at the hearing; and Dr. Koukol, a Disability Determination Services physician who reviewed the

record.  Tr. 168-69, 827-37.  The ALJ gave great weight to the opinions of Dr.

Francis and Dr. Koukol, but neither Dr. Francis nor Dr. Koukol discussed Dr.

Betz's findings or commented on the limitation regarding seven to ten days of

incapacity.  Tr. 168-69, 836-37.  Thus, not only did the ALJ fail to identify any

evidence inconsistent with Dr. Betz's finding, the ALJ did not identify any medical

opinion contradicting Dr. Betz's finding.  The ALJ therefore did not assign

appropriate weight to the opinion of the long-time treating specialist, Dr. Betz.

Based on the foregoing, the ALJ improperly rejected the portion of Dr.

Betz's opinion assessing a limitation of seven to ten days per month of incapacity.

When there is harmful error, the court has discretion to remand a case for

additional evidence and findings or to award benefits.  *Smolen v. Chater*, 80 F.3d

1273, 1292 (9th Cir. 1996).  An award of benefits may be directed where the record

has been fully developed and where further administrative proceedings would

serve no useful purpose.  *Id.*  Courts have credited evidence and remanded for an

award of benefits where (1) the ALJ has failed to provide legally sufficient reasons

for rejecting such evidence, (2) there are no outstanding issues that must be

resolved before a determination of disability can be made, and (3) it is clear from

the record that the ALJ would be required to find the claimant disabled were such

evidence credited.  *Id.* (citing *Rodriguez*, 876 F.2d at 763 (crediting treating

physician's uncontroverted testimony and awarding benefits); *Swenson v. Sullivan,*

876 F.2d 683, 689 (9th Cir. 1989) (crediting subjective symptom testimony and awarding benefits); *Varney v. Sec'y of Health & Human Servs.,* 859 F.2d 1396, 1401 (9th Cir.1988) (crediting subjective symptom testimony and awarding benefits)). Since the ALJ's reasons for discrediting a portion of Dr. Betz's opinion were legally insufficient, the opinion should be credited. However, there is an outstanding issue that must be resolved, so the matter must be remanded.

The vocational expert did not testify but completed interrogatories propounded by the ALJ. Tr. 375-80. The hypothetical contained in the interrogatories did not include the limitation assessed by Dr. Betz which was improperly rejected by the ALJ. Tr. 376. If the hypothetical to the vocational expert does not include all of the claimant's limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy. *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991); *Embrey*, 849 F.2d at 423; *Gallant v. Heckler*, 753 F.2d 1450, 1457 (9th Cir. 1984). Because the evidence from the vocational expert is insufficient once Dr. Betz's opinion is credited, the record is not fully developed and the matter must be remanded for additional vocational evidence which takes into account all of

Plaintiff's limitations.[2]  On remand, Dr. Betz's opinion shall be fully credited by the ALJ consistent with this decision and the ALJ shall further develop the vocational evidence on that basis.

## CONCLUSION

After reviewing the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error.  The ALJ failed to provide legally sufficient reasons supported by substantial evidence for rejecting Dr. Betz's opinion that Plaintiff is incapacitated for seven to ten days per month.  Therefore, the matter must be remanded.  On remand, Dr. Betz's opinion shall be fully credited and the ALJ shall develop additional evidence from the vocational expert consistent with this Court's order.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 19, is GRANTED.

---

[2] Without citing any authority, Plaintiff asserts, "Vocational experts traditionally testify that an employee can miss up to 1 to 2 days a month before they will be terminated."  ECF No. 19 at 10.  Plaintiff did not enter supplemental vocational evidence supporting this assertion into the record and therefore there is no basis upon which the Court can determine the vocational impact of Dr. Betz's limitation once credited.

ORDER - 20

2. Defendant's Motion for Summary Judgment, ECF No. 20, is DENIED.

3. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and forward copies to counsel. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

DATED June 1, 2018.

_s/Fred Van Sickle_
Fred Van Sickle
Senior United States District Judge